UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, ex )
rel. BRADY FOLLIARD, )
)
      Plaintiff, )
) Civil Case No. 07-1969 (RJL)
v. )
)
HEWLETT-PACKARD COMPANY, )
)
      Defendant. )

## MEMORANDUM OPINION
(January _11_, 2011) [#23]

Plaintiff-realtor Brady Folliard ("realtor" or "Folliard") brings this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, on behalf of the United States, against Hewlett-Packard Company ("defendant" or "HP"). Now before the Court is the defendant's Motion to Dismiss. After careful review of the pleadings, the relevant law, and the entire record, the defendant's motion is GRANTED.

## BACKGROUND

Defendant HP is an information and technology products and services company that sells to the United States government under the General Services Administration ("GSA") Multiple Awards Schedule and under the Solutions for Enterprise-Wide Procurement ("SEWP") contract managed by the National Aeronautics and Space Administration ("NASA"). First Amed. Compl. ("Compl.") ¶12. In addition to NASA, other federal agencies can purchase information technology products from HP under the NASA SEWP contract. *Id.* ¶13. Indeed, since 1992, HP had sold information technology

1

products and services under the NASA SEWP contract to NASA as well as other federal agencies.[1] *Id.*

NASA SEWP contracts are covered by the Trade Agreements Act, which generally prohibits the United States government from purchasing products that originated in non-designated countries, except in certain circumstances. *Id.* ¶¶16, 22. Vendors may list products from non-designated countries if the country of origin is truthfully identified. *Id.* ¶22. This allows individual contracting offers to review and apply the limited circumstances when purchase of a product from a non-designated country is permitted. *Id.* China is a non-designated country. *Id.* ¶18.

During the relevant time period, Folliard worked as a Strategic Account Executive at Insight Public Sector ("IPS"), selling information technology products and services to federal government agencies across the country. *Id.* ¶11. IPS is known in the industry as a Value Added Reseller, or VAR, because it is a business that combines, configures, and sells computer products but does not manufacture any product itself. *Id.* ¶¶24-25. IPS is an authorized selling agent for HP on the SEWP contract. *Id.* ¶29. As part of his employment with IPS, realtor became familiar with the products HP sold under the SEWP contract, which are listed on the NASA SEWP webpage, along with each

---

[1] Specifically, from July 30, 2001 until April 20, 2007, HP sold information technology products and services to federal agencies under Contract No. NAS5-01139. Compl. ¶13. On May 1, 2007, HP executed a second NASA SEWP contract, Contract No. NNG07DA17B, which is valid through April 30, 2014. *Id.* Realtor estimates that between 1992 and 2007, HP sold approximately $620 million in products and services to the United States government, and that over the last 10 years, HP has provided approximately $1 billion in goods and services to government customers in the District of Columbia. *Id.*

product's country of origin. *Id.* ¶¶29-30. In 2007, realtor identified 38 HP products that are incorrectly identified as originating in a designated country; according to realtor, these products are, in fact, from China, a non-designated country. *Id.* ¶¶31-33.

According to Folliard, each time HP listed these products on the NASA SEWP website, which it did in 2007, 2008, and 2009, HP knowingly made a material false statement, causing, in turn, submission of a false claim each time one of the mis-identified products was purchased. *Id.* ¶34. In his complaint, realtor claims that "[i]t is highly likely that some or all of these products were purchased by the Government, especially those with the 'B-21' ending [in the product ID number], because, based upon Plaintiff's experience, products with the suffix 'B-21' are commonly used and purchased in Government Information Technology applications." *Id.* ¶40. As such, Folliard contends that HP has violated 31 U.S.C. §§ 3729(a)(1) and (a)(2) (2008) of the FCA, as well as 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B) (West 2010) of the FCA, as amended by the Fraud Enforcement Recovery Act of 2009 ("FERA").

Folliard filed his initial complaint under seal on November 1, 2007. On December 9, 2009, having not yet heard from the government, the case was unsealed. On February 3, 2010, the United States filed notice that it did not intend to intervene in this matter. That same day, realtor filed his First Amended Complaint, which is the subject of defendant's Motion to Dismiss.

## ANALYSIS

A court may dismiss all or part of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to

dismiss, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

A plaintiff alleging fraud, such as one suing under the FCA, must also "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b); *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002)). The particularity requirement allows the defendant to "defend against the charge and not just deny that they have done anything wrong." *Williams*, 389 F.3d at 1259

4

(quotations omitted). Accordingly, to survive a motion to dismiss, a complaint pleading fraud must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud . . . [and must] identify individuals allegedly involved in the fraud." *Id.* at 1256 (internal quotations and citations omitted).

HP argues that the complaint must be dismissed in its entirety because it fails to identify: (1) any false claims submitted to the United States by HP; (2) the date of any such claims; (3) the content of any such claims; (4) the products for which the government was actually billed; (5) any individuals involved in the alleged fraud; and (6) the length of time between the alleged fraudulent practice and submission of claim for payment.[2] I agree.

Folliard lists four counts in his complaint, but in essence claims two FCA violations. Because the FCA was amended in 2009 by FERA, Folliard includes two counts for each statutory violation, alleging one each under the current statute as well as its prior version.[3] As another member of this Court has recently noted, however, the FERA changes to § 3729(a)(1) and (a)(2) are not material to a presentment claim to the

---

[2] Folliard urges the Court to take judicial notice of the 54 exhibits attached to his opposition to HP's motion. However, as the facts included in the exhibits and their accuracy is subject to reasonable dispute, the Court declines to do so in this case and does not consider the exhibits.

[3] The FCA was amended by FERA on May 20, 2009. Pub. L. No. 111-21 § 4(a), 123 Stat. 1617, 1621 (2009). All of the amendments to the FCA took effect immediately except for subsection 3729(a)(1)(B), which took effect on June 7, 2008. Specifically, Folliard claims that HP violated 31 U.S.C. § 3729(a)(1) prior to May 20, 2009, and the amended version, 31 U.S.C. § 3729(a)(1)(A), after May 20, 2009; and that HP violated 31 U.S.C. § 3729(a)(2) prior to June 7, 2008 and the amended version, § 3729(a)(1)(B) after June 7, 2008.

United States government. *United States ex rel. Folliard v. CDW Technology Servs., Inc.*, 722 F. Supp. 2d. 20, 25-26 (D.D.C. 2010) (Huvelle, J.).[4]

### A. Counts I and II

Count I and Count II of the complaint allege submission to the government of false claims for payment—Count I as a violation of the pre-FERA FCA subsection (a)(1), and Count II as a violation of the post-FERA FCA subsection (a)(1)(A). Because that section of the FCA "attaches liability, not to underlying fraudulent activity, but to the claim for payment," a realtor "must set forth an adequate factual basis for his allegations that the [defendant] submitted false claims . . . including a more detailed description of the specific falsehoods that are the basis for his suit" to satisfy the heightened pleading requirements. *Totten*, 286 F.3d at 551-52; 31 U.S.C. § 3729 (a)(1) and 31 U.S.C. § 3729(a)(1)(A) (imposing liability on a person who "knowingly presents, or causes to be presented" a false or fraudulent claim); *see also Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2009) (contrasting § 3729(a)(2), which does not require submission of the false claim to the government, with § 3729(a)(1), which does).

In this case, as HP points out, realtor does not identify a single false claim submitted to the government for payment. While Folliard has *alleged* that HP "knowingly submitted, and caused to be submitted, false or fraudulent claims for

---

[4] The United States argues that FERA strengthened the FCA such that the amended version of the FCA imposes liability for presentment of a false claim for payment by either the federal government or the recipient of federal funds. United States Stmt of Interest [Dkt. #28] at 5 (citing S. Rep. No. 111-10 and 10-15 (2009)). In this case, however, that distinction is without consequence as Folliard has only alleged presentment of false claims to the federal government.

payment and reimbursement by the United States Government" and the United States paid these false claims (Compl. ¶¶44, 48), he has failed to plead any *facts* supporting this bald recitation of the statute. Instead, Folliard merely argues that it is reasonable to infer that the government purchased at least some of the 38 products whose country of origin was misidentified, and that in selling those products HP caused a false claim to be submitted. But Folliard has not even alleged such a sale. To say the least, such speculative inferences are not sufficient to raise Folliard's "right to relief above the speculative level," as required by *Twombly*. 550 U.S. at 553.

Undaunted, Folliard argues that he need not plead actual submission of a false claim because he alleges "particular details of a scheme to submit false claims paired with reliable indicia that led to a strong inference that claims were actually submitted." Pl.'s Opp'n 24-25 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)); *see also Folliard*, 722 F. Supp. 2d at 26-27. However, I do not find Folliard's assertions to be reliable indicia that the claims were actually submitted. Folliard does not point to anything other than the general popularity of some of the products on his list to support the allegation that a false claim was submitted to the government. There is nothing to indicate that the government did, in fact, purchase any of these products from HP. Moreover, even assuming that Folliard had met his burden in pleading the submission of a false claim, the complaint fails to identify who made the false claims, when those claims were made, and any additional details about the content

of the claims, and thus fails to meet the requirements of Rule 9(b) on these grounds as well.[5] Accordingly, Counts I and II must be dismissed.

### B. Counts III and IV

Count III and Count IV allege that in misrepresenting the country of origin of its products, HP "knowingly made, used, or caused to be made or used, material false statements to obtain Federal Government payment for false or fraudulent claims" in violation of pre-FERA § 3729(a)(2) and post-FERA § 3729(a)(1)(B). Compl. ¶¶53, 58. Like Counts I and II, both Counts III and IV lack the required specificity to satisfy realtor's pleading burden and must also be dismissed.

As to Count III, a violation of § 3729(a)(2) requires "that the defendant made a false record or statement for the purpose of getting a 'false or fraudulent claim paid or approved by the Government.'" *Allison Engine*, 553 U.S. at 671 (quoting 31 U.S.C. § 3729(a)(2) (2008)). Unlike § 3729(a)(1), the defendant need not present the false claim *directly to* the government to be liable; instead, the defendant must only *intend* for the government to pay the claim. *Id.* at 669. However, to properly plead a § 3729(a)(2) violation, a plaintiff must nevertheless allege that a false claim does, in fact, exist, even if it was not submitted directly to the government by the defendant. As discussed above,

---

[5] Folliard also argues that he should be entitled to post-pleading discovery under the Rule 11(b)(3) exception because he has illustrated a high likelihood of uncovering evidence necessary for a ruling in his favor. However, as courts in this and other jurisdictions have noted, the heightened pleading standards of Rule 9(b) serve in part to prevent the filing of a complaint as a means of discovering an unknown wrong. *See, e.g., Martin v. Arc of the District of Columbia*, 541 F. Supp. 2d 77, 83 (D.D.C. 2008); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990). Allowing Folliard to proceed to post-pleading discovery under Rule 11(b)(3) would directly contravene this purpose.

such allegations are completely absent from the complaint at issue. Moreover, under the heightened Rule 9(b) requirements, the plaintiff must plead additional details about who made the false statements and when they were made, which Folliard has failed to do. Accordingly, Count III must be dismissed.

For the same reasons, Count IV must also be dismissed. Though the parties dispute whether the retroactivity language of the FERA amendment applies to claims for payment pending as of June 7, 2008, or to court cases pending as of that date,[6] even assuming that § 3729(a)(1)(B) applies to realtor's claims, Count IV, which alleges the same violation as Count III, must be dismissed for the same reasons previously discussed as to Count III.

In sum, as the defendant points out, Folliard's complaint consists of little more than a list of 38 HP products available for sale on the NASA SEWP website that mistakenly identify the country of origin. Folliard does not provide any information as to whether any of these products were, in fact, purchased by the United States; instead, he speculates that because at least some of the products with similar item number suffixes are "commonly used and purchased," it is therefore highly likely that at least some of the

---

[6] The amendment states, in relevant part, that "subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all *claims* under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date." FERA, Pub. L. No. 111-21, § 4(f)(1), 123 Stat. at 1625 (2009) (emphasis added). Note, however, that members of this Court have held on multiple occasions that "claims" refers to claims for payment, and not pending court cases. *See, e.g.*, *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2010) ("The word 'claims,' as it applies in the relevant provision, refers to 'a defendant's request for payment' and not to 'civil actions for FCA violations.'") (quotation omitted); *United States ex rel. Bender v. North Am. Telecomm., Inc.*, 686 F. Supp. 2d 46, 49 n.4 (D.D.C. 2010).

products were purchased by the government. *See* Compl. ¶40. As discussed above, because Folliard has not—and in all likelihood, cannot—allege the facts required to state a claim under Rule 9(b), each count of Folliard's complaint must be dismissed.[7]

## CONCLUSION

For all the foregoing reasons, the defendant's Motion to Dismiss is GRANTED. An appropriate order shall accompany this memorandum opinion.

*[signature]*
RICHARD J. LEON
United States District Judge

---

[7] This action will be dismissed with prejudice as to all parties. Realtor filed his initial complaint in November 2007, and had over two years to conduct additional discovery and amend the current complaint. The United States also had over two years to elect to intervene or to prepare a complaint in this matter and declined. Accordingly, this action shall be dismissed with prejudice as to both realtor and the United States.